UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                              CR# 03-10362 PBS

SEAN D. STARK

## DEFENDANT SEAN D. STARK'S SUPPLEMENTAL MEMORANDUM OF FACT AND LAW IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A MOTOR VEHICLE STOP

Now comes the defendant in the above action, Sean D. Stark, and submits this supplemental Memorandum of Law and Fact in support of his Motion to Suppress all evidence discovered and seized during a motor vehicle stop and the subsequent search of that vehicle on October 22, 2003.

## STATEMENT OF ADDITIONAL FACTS

On October 22, 2003, the defendant, Sean Stark, was riding in a "Recreational Vehicle" (RV) traveling eastbound on Interstate 44 in Missouri. The RV was driven by Christopher Sugar, and they were only the two people in the RV. Mr. Stark had written permission from the owner of the RV to drive and use it for a long distance trip, and Mr. Stark had control of the RV and its contents. As they were traveling down a wide divided highway, the vehicle was stopped for a "moving violation." Mr. Stark did not witness any traffic violations committed by Mr. Sugar, and does not believe that any were committed.

The RV was pulled over by a Deputy Carmelo Crivello, driving a marked police car. Deputy

Crivello approached the RV and began asking the two men questions, including where they were going. After taking Mr. Sugar and Mr. Stark's drivers' licenses, the officer returned to his vehicle with Mr. Sugar to "run the license" and do a background check on both parties. At no point during this did the Deputy write a summons for the traffic violation.[1]

The stop was allegedly predicated on a violation of Missouri law. This violation was based upon Missouri Rev. Statutes Chapter 304, § 304.015. However, this statute would not have given Deputy Crivello probable cause, or even reasonable suspicion, to believe the vehicle had committed a traffic violation.

The text of the statute is as follows:

304.014(4)(5)(1): A vehicle shall be driven *as nearly as practicable entirely within a single lane* and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety..."(Attached hereto as Exhibit "A")

The testimony of the Deputy, at the Suppression Hearing, was that the statute prohibited crossing the white "fog" line under any circumstances.

## ARGUMENT

1.  <u>The seizure of the RV was done without reasonable suspicion of any criminal activity.</u>

As shown by the wording of the Missouri Statute, there is little question that the mere crossing over the "fog" line is not illegal *per se*. It is, rather, only where the Deputy has suspicion that the vehicle

---

[1] The Deputy testified that he wrote the summons at a later time, after the stop, and Mr. Sugar testified (without contradiction) that he received the summons in a box with some of his belongings at a later date.

is not being kept in the lane as "nearly as practicable" that he may stop it. Furthermore, that language must be construed narrowly in keeping with the rule of lenity in criminal cases. See generally Castillo v. United States, 530 U.S. 120, 131 (2000), quoting Staples v. United States, 511 U.S. 600, 619, n. 17 (1994) (rule of lenity requires that "ambiguous criminal statutes . . . be construed in favor of the accused").

Deputy's Crivello's testimony was that he observed the vehicle's rear tire crossing over the white "fog line" three times. He was unable to recall what the weather was on that day.[2] The deputy provided no testimony that it was "practicable" for Mr. Sugar to drive the vehicle completely within the single lane, nor what the police determine to be "practicable" for the purposes of enforcement. Therefore, the Deputy did not set forth reasonable suspicion to believe the vehicle had committed a motor vehicle offense.

Further bringing into question the Deputy's assertion that this was a traffic stop is the fact that he did not write a "summons" while the vehicle was detained at the side of the road.[3] He testified that he did a background check on the defendants when he went back to the cruiser with Mr. Sugar, but did not write the summons. In fact, he testified that he did not write the summons until after the drug dog arrived at the scene. Not only were the defendants unlawfully detained without reasonable suspicion until the drug dog arrived, but the Deputy did not have reasonable suspicion of a traffic

---

[2] Neither Mr. Stark nor Mr. Sugar, who also testified at the Suppression Hearing, were able to recall the weather conditions or whether it was a windy day. The testimony of the defendants was that the vehicle was difficult to control in any type of crosswind. Although Deputy Crivello testified that no trucks passed the RV in the eastbound lane, he did not testify as to whether there was heavy truck traffic in the westbound lane, which was separated only by a narrow grass median.

[3] A copy of the Summons is attached hereto as Exhibit "B."

violation in the first place. If this were a legitimate traffic stop, the Deputy would have written the summons while waiting for the arrival of the drug dog.

## CONCLUSION

Where the stop was made without reasonable suspicion of a traffic violation, the "fruits" of that stop and subsequent search must be suppressed. Furthermore, even should the Court determine the initial stop was made lawfully, the detention while awaiting the drug dog sniff was a seizure of the persons and property of Mr. Stark (and Mr. Sugar), and therefore unlawful.

Date:  May 26, 2004

Respectfully Submitted,
Sean D. Stark, by his attorney,

Melvin Norris
260 Boston Post Road, Suite 9
Wayland, MA 01778
(508) 358-3305
BBO# 373900

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Assistant United States Attorney Cynthia W. Lie, Federal Courthouse, Boston, Massachusetts on this date by first class mail, postage prepaid, and to Mark Shea, Esq., 47 third Street, Cambridge, MA by fax.

Date:  May 26, 2004