UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                              CR# 03-10362 PBS

SEAN D. STARK

**DEFENDANT SEAN D. STARK'S RESPONSE TO
THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO DISMISS**

Now comes the defendant Sean D. Stark, by court appointed counsel, and submits this memorandum in response to the Government's opposition to his Motion to Dismiss. The defendant submits this also as a supplemental request that this Court dismiss with prejudice the charges against him, as set forth in both the original indictment and the superseding indictment.[1]

FACTUAL BACKGROUND

The defendant, Sean Stark, is charged in counts 1 and 2 of an Indictment dated December 3, 2003, and in a Superseding Indictment dated October 13, 2004. Count I is for Conspiracy to Distribute Marijuana and to Possess with Intent to Distribute Marijuana in violation of 21 U.S.C. § 846, and Count II is for Possession with Intent to Distribute Marijuana (with an aiding and abetting allegation) in violation of 21 U.S.C. § 841(a)(1).

Mr. Stark filed a Motion to Suppress Statements and Evidence as a result of the circumstances of his traffic stop in Missouri, which was allowed on June 24, 2004, after a full evidentiary hearing. The government filed a Notice of Appeal on July 23, 2004, and that appeal

---

[1]This supplemental motion is amended to include a request that both indictments be dismissed. The previous motion only referred to the Superseding Indictment.

was voluntarily dismissed by the government, with Judgment of the Appeals Court entering on January 10, 2005.

The Superseding Indictment is substantially similar to the Original Indictment. In the Superseding Indictment, the defendant Anibal Torres was removed from Count 1, Count 3 likewise removed Anibal Torres, the Forfeiture Allegation removed Anibal Torres, and then added a Notice of Additional Factors.[2] This Notice included 5 numbered paragraphs, but of those, only number 2 applied to the defendant Sean Stark. This Notice was included post-*Blakely* but prior to *United States v. Booker*, in anticipation of a need to prove the drug amounts to a Jury. The substantive charges against Sean Stark are the same between the Original Indictment and the Superseding Indictment.

Mr. Stark was arraigned on the Original Indictment, but was not arraigned on the Superseding Indictment due to the fact that the Appeal was pending on the Motion to Suppress. The Superseding Indictment was returned on October 13, 2004, when the decision of this Court was under appeal to the First Circuit Court of Appeals. On October 14, 2004, the case was referred to Magistrate Judge Dein for pretrial proceedings regarding the superseding indictment. On December 8, 2004, the defendant filed a Motion to Stay Proceedings pending the resolution of the government's appeal to the First Circuit. The Court of Appeals issued the Mandate dismissing the appeal at the Government's request on January 19, 2005. Mr. Stark has not been arraigned on the Superseding Indictment to this date.[3]

---

[2]In fact, the wording in the superseding indictment differs from that in the original indictment, but the substance of the charges remain the same.

[3]On January 20, codefendants Fabian Ruiz and Trevor Teague were reassigned from Judge Saris to Judge Young for trial. This action did not affect Mr. Stark (nor Mr. Sugar). They

**ARGUMENT**

1. <u>The government has insufficient evidence to support the indictment as a result of this Court's suppression of evidence seized after an illegal search and seizure.</u>

As a result of this Court's granting of Mr. Stark's Motion to Suppress, the government has no evidence of Mr. Stark's possession of marijuana. The statements made by Mr. Stark were likewise suppressed, and therefore there is little evidence to support the allegations of Count II. Any further statements given by Mr. Stark after his cooperation with the government in proceeding with a controlled buy are certainly tainted by the fact that he was only arrested as a result of an illegal search and seizure.

The government advances a novel theory regarding why statements made by the defendant are not fruit of the poisonous tree. This theory appears to go as follows: Despite the fact that the stop and subsequent seizure of evidence was illegal, the fact that the government received cooperation from the defendant afterward attenuates the taint of the stop. This argument is without any logical underpinnings, and is unsupported by the cases it cites.

The first case the government cites is <u>United States v. Monti</u>, 557 F.2d 899 (1st Cir. 1997). This case is distinguishable on myriad grounds, not the least of which being that the illegal statements were made after an investigation was being done by the government, and the defendant was arrested subsequent to that investigation. Monti specifically "presents no issue of illegal search or arrest." <u>Monti</u>, 557 F.2d at 903. Worse yet, the statements in Monti were made after meeting with counsel. Id. This case simply has no connection to the facts of this case. The

---

were the only defendants who remained with Judge Saris. This was effectively a severance of the cases.

same problem attaches to United States v. Johnson, 121 F.3d 1141 (8th Cir. 1997), where there was an arrest warrant issued, and the allegedly illegal arrest and procedure followed the execution of the warrant.

Again in United States v. Bradley, 922 F.2d 1290 (6th Cir. 1991), the illegal arrest of the defendant followed an investigation and indictment.  United States v. Seidman involved a lengthy investigation, with a cooperating witness alleged to be operating as a government witness while recording a conversation.  156 F.3d. 542 (4th Cir. 1998).  Finally, the government cites United States v. Ayers, 725 F.2d 806 (1st Cir. 1984), where the arresting officers were found to have had probable cause to make the warrantless arrest from which any statements flowed.

These cases cited by the government reveal a misunderstanding of the issues presented in this case.  The government appears to be assuming that the illegal arrest was made after investigation, and therefore there was some type of independent source for the arrest, stop, or subsequent interrogations.  This position could not be further from the facts involved in this case.

In this case, the illegal detention and seizure resulted from a traffic stop.  There was no prior information about Mr. Stark, and no suspicion of illegality.  Mr. Stark was not under prior investigation for any crime.  If the illegal stop had not taken place, there would have been no evidence of Mr. Stark's involvement.  Additionally, if not for the illegal stop, the government would not have had the two proffered witnesses, Sugar (who was in the vehicle with Stark) and Ruiz (who was arrested after Stark and Sugar agreed to assist the government with a controlled

delivery).  Under these circumstances, to argue attenuation is specious at best.[4]

"[W]ell-established precedent requires suppression of [a] confession unless that confession was "an act of free will [sufficient] to purge the primary taint of the unlawful invasion."  Wong Sun v. United States, 371 U.S. 471, 486 (1963). Demonstrating such purgation is, of course, a function of circumstantial evidence, with the burden of persuasion on the state. See Brown v. Illinois, 422 U.S. 590, 601-602 (1975) . Relevant considerations include observance of Miranda, "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." Kaupp v. Texas, 538 U.S. 626, 632-633 (U.S., 2003) (citations omitted). "Important to an analysis of whether there is sufficient attenuation is whether the arrestee confessed without any intervening event of significance. ("No intervening events broke the connection between petitioner's illegal detention and his confession")."  Taylor v. Alabama, 457 U.S. 687 (1982) (citations omitted).

The problem with the government's position in this case is twofold.  Even if the Court finds that the statements in this case were voluntary under the Fifth Amendment, the Fourth Amendment issue remains in the form of the illegal seizure. "In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." Wong Sun thus mandates

---

[4]This Court may certainly find that Mr. Ruiz's arrest and post arrest statements were attenuated from the illegal search, under Wong Sun v. United States, 371 U.S. 471 (1963). However, this cannot "relate back" to justify the illegal seizure and be used against Mr. Stark.  If not for the illegal seizure of Mr. Stark, there would not have been cooperation by Sugar and Stark, and Ruiz would not have been arrested at all.

consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." Brown v. Ill., 422 U.S. 590, 601-602 (1975).

The government's position also would lead to a strange result, where an illegal search leads to a legal statement by the simple fact of the passage of time. "Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words."" Brown v. Ill., 422 U.S. 590, 602-603 (1975)

"The temporal proximity of the arrest and the confession, the presence of intervening circumstances ..... are all relevant ... The voluntariness of the statement is a threshold requirement." Brown v. Ill., 422 U.S. 590, 603-604 (1975) (citations omitted). In this case, it is notable that any statements made by the defendants which were not made nearly contemporaneously with the arrest were made in the context of assisting the government with a controlled buy.

The greatest flaw in the government's argument of attenuation is its failure to acknowledge that every statement made by Stark and Sugar was a direct result of the unlawful stop and arrest (as was their subsequent cooperation with the government). There was no possible way for these statements to be obtained other than the direct unlawful seizure of both parties. The fact that both parties agreed to give statements thereafter and assist the government by cooperating in the controlled delivery does not attenuate the taint at all. Any position

otherwise would directly contradict the holding of Brown v. Ill., 422 U.S. 590 (1975), that the Miranda warning does not cure the taint from an illegal seizure.

2. <u>The case against Mr. Stark should be dismissed with prejudice due to the government's violation of the Speedy Trial Act, 18 U.S.C. 3161 (the STA).</u>

The return of a superseding indictment, where it changes defendants but does not change the substantive charges against Mr. Stark, does not re-start the speedy trial clock. U.S. v. Rojas-Contreras, 474 U.S. 231, 234-235 (1985); See United States v. Santiago, 130 F.3d 11, 19 (1st Cir. 1997).[5]

Mr. Stark's position is amply supported by the Supreme Court decision in U.S. v. Rojas-Contreras, 474 U.S. 231, 234-235 (1985). In that case, the Court found that a Superseding Indictment did not restart the Speedy Trial act clock with regard to the thirty day minimum time period before a trial. Id. The Speedy Trial act does not mention the word indictment, and therefore there is no reason that the statute was intended to toll the time because of the superseding indictment. The defendant further notes that, in Rojas-Contreras, much like the instant case, the superseding indictment was also a correction to the original indictment, as opposed to a substantive change in the charges.[6] By implication, if the thirty day period for trial

---

[5] If a superseding indictment applies to multiple defendants, a motion by any defendant normally tolls the STA time for the co-defendants. However, this case is different because Mr. Stark was not going to trial in conjunction with any other defendant in the matter. Cf. United States v. Ortiz, 23 F.3d 21, 27-28 (1st Cir. 1994); Torres Lopez, 851 F.2d at 526. Not only were the other defendants' cases not going to be tried together with Stark's, but they were transferred to a different Judge for trial. This further distinguishes them from other cases where the cases were not severed for trial, and a pretrial motion by another defendant tolls the STA clock. See e.g. U.S. v. Santigao, 130 F.3d 11, 19-20 (1st Cir. 1997).

[6] Certainly the superseding indictment was different in that it added a "Notice of Additional Factors. However, for reasons set forth *infra*, this does not change the STA

does not restart based upon the issuance of a superseding indictment, neither should the STA time be tolled for the same reason. See generally Rojas-Contreras, 474 U.S. at 239 ("The provisions demonstrate, however, that the 30-day and 70-day periods were intended to operate in tandem; where one runs anew, so should the other..." (Blackmun, J., concurring)).

The government's argument that the clock should be restarted based upon the superseding indictment ignores the fact that the original indictment was never dismissed. See generally 18 U.S.C. § 3161(h)(6); Rojas-Contreras, 474 U.S. at 239 (Blackmun, J. concurring) ("both the 30-day and 70-day periods continue to run from the first indictment, with the proviso that the period during which no indictment is outstanding is excluded from the 70-day calculation ... [this] protects against governmental circumvention of the speedy trial guarantee."). The government's position and procedure is precisely what that provision is designed to avoid; the government's ability to infinitely prolong trial on the original indictment by issuing identical superseding indictments to restart the clock. See 18 U.S.C. § 3161(h)(6).

In this case, the superseding indictment was merely intended to remove one defendant, and add a "Notice of Additional Factors" as to the defendant. This addition is clearly surplusage[7] in light of U.S. v. Booker, and should be stricken from the indictment. The result is a substantively identical, as to Mr. Stark, indictment for the same charges.

Finally, the defendant is not, for purposes of this memorandum, counting time which

---

implications.

[7]These notices were included to cure a potential Blakely violation by the Government. After the decision in U.S. v. Booker, __ U.S. __ (2005), these Factors became surplusage to the indictment. If the surplusage is then stricken, the indictment as to Mr. Stark remains substantively the same.

elapsed prior to the Mandate issuing from the Court of Appeals. Leaving aside the question of whether the Mandate restarted the STA clock, more than 70 non-excludable days have passed *since the Mandate issued*.[8] The government argument appears to be that since the defendant has not appeared in Court since the date of the Mandate, the speedy trial act has not begun to run. This is a faulty analysis of the STA under Rojas-Contreras, and ignores the First Circuit decision in Joost. United States v. Joost, 133 F.3d 125, 130 (1st Cir. 1998) (stating, inter alia, that the STA clock runs from the issuing of a Mandate).

The defendant also notes that the failure to arraign the defendant may be easily characterized as lack of diligence on the part of the United States Attorneys' Office, which is not a permissible reason for excluding time to trial. 18 U.S.C. 3161 (h)(8)(c).

In short, the failure of the defendant to be Arraigned on an essentially duplicative superseding indictment cannot toll the STA clock. As a result, more than 70 non-excludable days have passed since the issuance of the Mandate in this case[9], and this case must be dismissed pursuant to the provisions of the Speedy Trial Act.

In requesting a dismissal, the defendant has requested that the Court dismiss this case with prejudice. This is for essentially two reasons. The first is that the government's failure to

---

[8]For this reason, a Barnes analysis is inapposite, because the original indictment was never dismissed or reinstated as a result of the Mandate. While the defendant does not dispute that the time on Appeal is excludable, the clock should certainly have started running once again after the Mandate issued. See generally United States v. Joost, 133 F.3d 125 (1st Cir. 1998); United States v. Barnes, 251 F.3d 251, 255 (1st Cir. 2001).

[9]It is the defendant's position that the STA clock began to run at his initial appearance before a Court in 2003. Rather than count days since the initiation of this case, it is simpler to note that 70 non-excludable days have passed even since the Mandate issued. This renders moot any counting of days prior to the government's Appeal.

press this case with diligence militates against their being permitted to get "another bite at the apple." The second, and more compelling, reason is that the government's case has been made either unprovable or hopelessly weak as a result of the suppression of evidence by this Court. Where the government is left with little or no evidence in this matter, the case should be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above and in the Motion to Dismiss, the defendant moves that this Court Dismiss both the original Indictment and the Superseding Indictment with prejudice.

                                                    Respectfully Submitted,
                                                    By his attorney,

                                                        /s/ MELVIN NORRIS

Date:   April 25, 2005

                                                  Melvin Norris
                                                  260 Boston Post Road
                                                  Wayland, MA 01778
                                                  (508) 358-3305
                                                  BBO# 373900