UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                           )
UNITED STATES OF AMERICA   )
                           )
           v.              )        CRIMINAL NO. 03-10362-PBS
                           )
CHRISTOPHER SUGAR and      )
 SEAN D. STARK,            )
                           )
           Defendants.     )
_____)
```

**MEMORANDUM AND ORDER**

July 19, 2005

SARIS, U.S.D.J.

## I.  INTRODUCTION

Defendant Sean Stark, charged with trafficking in marijuana, moves to suppress statements he made to law enforcement officials as the fruit of the poisonous tree sprouting from an unlawful search of his recreational vehicle ("RV").  This Court held that the search of the RV violated the Fourth Amendment.  See United States v. Sugar, 322 F. Supp. 2d 85 (D. Mass. 2004).  The government argues that under the doctrine of attenuation, the statements are admissible.  After an evidentiary hearing in which DEA Agents Robert Hanson and David O'Neill and the defendant testified, I **ALLOW** the motion to suppress the statements made on October 22, 2002, and **DENY** the motion to suppress the statements made on October 24, 2002.

## II.  FINDINGS OF FACT

Defendant Stark and Christopher Sugar were arrested on
October 22, 2002, after officials found 376.9 pounds of marijuana
in a borrowed RV they were driving.  Within an hour of his
arrest, the defendant was interrogated in a detention facility in
the Phelps County Sheriff's Department.  During this initial
encounter with the police, Stark declined the chance to cooperate
and was returned to his holding cell.  He does not remember if he
was Mirandized during this first interrogation.  During a second
interrogation, Stark confessed to the crime to Detective Richard
Hope and was asked if he would cooperate with the police by
making a controlled delivery in an attempt to arrest "Diablo,"
who was to have received the marijuana in Boston.  He was given
his Miranda rights before the second interrogation.  During the
second interrogation, Stark was told that he was facing fifteen
years in prison and could benefit by cooperating.  He agreed to
cooperate with the plan but added that Sugar did not know
anything.

The Drug Enforcement Administration in St. Louis was
contacted and agents Robert Hanson and Leslee Tate came to
interrogate Stark.  Together with another officer, at 7:30 p.m.
they went into the detention room, stating, "We understand you
want to cooperate."  The defendant was Mirandized again,
confessed again to the crime and his prior dealings with "Diablo"

2

and again agreed to cooperate.  Sugar did the same.

The following day, October 23, 2002, Stark was driven in the RV in handcuffs to St. Louis and signed a statement of rights as well as a prompt presentment waiver form.  (Exs. 1, 2.)  Stark received his Miranda rights for the third time and made a few statements to Agent Tate.  (Ex. 4.)  It is unclear whether he made any new statements at this time.

Agent Hanson drove to Boston in the RV with Stark, who was handcuffed with his hands in front of him.  Another agent drove separately with Sugar.  When they took rest stops, neither Stark nor Sugar was handcuffed.  The defendant had a chance to rest and eat during the 23 hours it took to drive to Boston.

When they arrived at 10:30 a.m. on October 24, 2002, Agent O'Neill, the case agent, took custody of Stark and Sugar, the RV, and the marijuana.  Stark was Mirandized for the fourth time and de-cuffed.  He signed a confidential source agreement.  Between 10:30 a.m. and 3:30 p.m., Stark, Sugar, and the agents arranged for the controlled delivery to take place at the Holiday Inn in Marlborough.  The agents disabled the RV.  Stark volunteered to wear a wire and proactively suggested several tactics.  In one instance he pointed out that certain statements the officers suggested he say over the phone might inadvertently warn his brother-in-law Fabian Ruiz, who was one of the men supposed to pick up the marijuana.  Stark and/or Sugar suggested that the disarray of the RV might also alert Ruiz to the setup, and joined

3

the agents in frantically cleaning.  After four phone calls back and forth between Stark and Ruiz, Ruiz arrived at the hotel and was arrested with others who arrived to unload the marijuana.

### III.  DISCUSSION

This Court held that the initial stop "was not reasonable or justified by probable cause," 322 F. Supp. 2d at 92, and that there lacked "reasonable suspicion for holding the defendant[] until the canine arrived," id. at 93.  The seized marijuana was suppressed as "fruit of the poisonous tree," and the defendant now argues that the confession and statements made during the two interrogations with Detective Hope and Agents Hanson and Tate on October 22, 2002, as well as statements made during the course of the controlled delivery on October 24, 2002, should likewise be suppressed.

### A.    The Attenuation Doctrine

A court "need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).  Instead, whether the evidence is admissible depends on whether it has been obtained "'by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. at 488 (internal citations omitted).  However, "a confession obtained through custodial interrogation after an illegal arrest

4

should be excluded unless intervening events break the causal connection." Taylor v. Alabama, 457 U.S. 687, 690 (1982).

To determine whether the causal chain between an illegal arrest and a subsequent statement has been broken, a court should consider several factors: whether (and the number of times) Miranda warnings were read, the "temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct." Brown v. Illinois, 422 U.S. 590, 603-04 (1975) (citation omitted). "The voluntariness of the statement is a threshold requirement." Id. at 604.

Although a tainted confession serves to forever "let the cat out of the bag," subsequent confessions should not be automatically suppressed. See United States v. Bayer, 331 U.S. 532, 540-41 (1947) ("[T]his Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed."). If the suspect has a "genuine choice" not to make a subsequent confession, and if the subsequent confession is sufficiently voluntary, it may be allowed. See Missouri v. Seibert, 542 U.S. 600, 657 (2004) ("[S]ince a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, the Miranda warnings could have made sense as

5

presenting a genuine choice whether to follow up on the earlier admission.").

**B.    Statements of October 22-24, 2002**

Defendant challenges the admissibility of three sets of statements: the defendant's confession to Detective Hope, which occurred on October 22 following his arrest; his statements to DEA agents Hanson and Tate in the evening of October 22 after agreeing to cooperate, made within a few hours of his initial confession; and the statements made during the controlled delivery on October 24.

I conclude that both of the statements made the day of the arrest, October 22, 2002, were tainted by the illegal stop and detention.  While the defendant had been Mirandized at least once, the amount of time between the illegal conduct and the first confession was insufficient to break the causal connection. See, e.g., Dunaway v. New York, 442 U.S. 200, 218 (1979) (suppressing statements where the defendant was seized "without probable cause in the hope that something might turn up, and confessed without any intervening event of significance"); Kaupp v. Texas, 538 U.S. 626, 633 (2003) (vacating conviction where the defendant confessed after police woke him for an early morning interrogation while partially clothed, and where no intervening circumstances appeared).  Never having been in jail before, Stark felt stressed and tired.  Once he confessed in the early

6

afternoon, the cat was out of the bag.  See Bayer, 331 U.S. at
540 ("[A]fter an accused has once let the cat out of the bag by
confessing, no matter what the inducement, he is never thereafter
free of the psychological and practical disadvantages of having
confessed. He can never get the cat back in the bag.").  Stark
did not have a "genuine choice" of whether to confess during the
second interrogation with Detective Hope; the conversation
assumed his previous confession and involved the plan to arrest
"Diablo."  Therefore, the second confession to the DEA agents was
also tainted.

I do find, however, that the statements of October 24, 2002
were voluntary and that intervening events purged the taint with
respect to all statements and activities on October 24, 2002.
While he did not have (or request) counsel, Stark had been given
Miranda warnings four times.  The statements were made two days
after the arrest, the defendant was rested, fed and de-cuffed.  A
new officer was involved in a different location.  In particular,
his proactive participation in the investigation indicates
voluntariness.  Moreover, the initial search and seizure was not
an egregious violation of the Fourth Amendment.  Accordingly, the
taint has been purged with respect to the statements made on
October 24, 2002.  See, e.g., United States v. Ayres, 725 F.2d
806, 810 (1st Cir. 1984) (admitting statements made after the
defendant was removed from the scene of his original questioning,

received Miranda warnings for the third time, and was interrogated by a different officer when he was "relaxed, composed, and uncoerced"); United States ex rel. Hayward v. Johnson, 508 F.2d 322, 327-28 (3rd Cir. 1975) (viewing the record in its totality, the court allowed a confession in light of the Miranda warnings, the speed with which the defendant confessed, his familiarity with police practices, his refusal to confess during prior interrogations, and the fact that he did not go into substance withdrawal until hours after confessing), overruled on other grounds by Patterson v. Cuyler, 729 F.2d 925, 932 (3d Cir. 1984).

## ORDER

The motion to suppress the statements of October 22, 2002, is **ALLOWED**.  The motion to suppress the statements made on October 24, 2002, is **DENIED**.


                                        S/PATTI B. SARIS
                                   United States District Judge

8