UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                        CR# 03-10362 PBS

SEAN D. STARK

### DEFENDANT SEAN D. STARK'S OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE A HEARING IS REQUESTED ON THIS OPPOSITION

Now comes the defendant Sean D. Stark, by court appointed counsel, and submits this

Opposition to the Government's Motion in Limine filed on November 4, 2005.

FACTUAL BACKGROUND

The defendant, Sean Stark, is charged in counts 1 and 2 of an Indictment dated December

3, 2003, and in a Superseding Indictment dated October 13, 2004.  Count I is for Conspiracy to

Distribute Marijuana and to Possess with Intent to Distribute Marijuana in violation of 21 U.S.C.

§ 846, and Count II is for Possession with Intent to Distribute Marijuana (with an aiding and

abetting allegation) in violation of 21 U.S.C. § 841(a)(1).

Mr. Stark filed a Motion to Suppress Statements and Evidence as a result of the

circumstances of his traffic stop in Missouri, which was allowed on June 24, 2004, after a full

evidentiary hearing.  This Court granted in part and denied in part Mr. Stark's subsequent Motion

to Exclude Statements gathered after the illegal stop.  The Court suppressed statements made

immediately after the stop and through the next day, but declined to suppress any statements

made to agent O'Neill once Mr. Stark arrived in Boston to cooperate with a controlled delivery.[1]

As a result of these rulings, the evidentiary situation in this case is left in flux. According to the Court's prior rulings, the drugs and immediate confession would be inadmissible, but the government is seeking to introduce testimony about the drugs nonetheless through its cooperating witnesses and through the agents.

## ARGUMENT

### A.    Evidence of the Conspiracy Prior to the Traffic Stop

The government seeks to introduce evidence of the conspiracy prior to the traffic stop. The evidence will apparently consist of testimony from Ruiz, Sugar and Torres. This evidence, however, will inevitably refer to, and indeed centers around, the drugs suppressed in the traffic stop. Furthermore, any testimony by Sugar will be centered around the transportation of the suppressed evidence to Massachusetts.

At the outset, the Mr. Stark notes that under Federal Rule of Evidence 801 (d)(2)(E), statements of coconspirators are not hearsay if made during the course and in furtherance of the conspiracy. However, the conspiracy cannot be proved only through such evidence, but needs an independent source of proof. The government cannot provide that evidence in this case. The only evidence of conspiracy is the testimony of coconspirators where the drugs were suppressed. Further, any actions taken during the controlled delivery were made when Stark was acting as an agent of the government, and should not be considered evidence of the conspiracy.

The government must show that the conspiracy existed, that the declaration was made

---

[1]These will be referred to as the first statement and the second statement. While there was discussion of a third, more limited statement, this Court treated it as suppressed.

during the course of the conspiracy, and that the declaration was in furtherance of the conspiracy. *See e.g. U.S. v. Sepulveda*, 15 F.3d 1161, 1181-82 (1st Cir. 1993). Under Rule 801, the statements of co-conspirators are not alone sufficient to establish the existence of a conspiracy. There must be some extrinsic evidence of the conspiracy outside of the contents of the statements. *See e.g. U.S. v. Sepulveda*, 15 F.3d 1161, 1181-82 (1st Cir. 1993).

Evidence gained through an illegal stop is generally inadmissible against the defendant. "evidence that has been illegally obtained . . . is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." *James v. Illinois*, 493 U.S. 307, 313 (U.S. 1990) (citations omitted).

As the defendant argued in his Motion to Suppress Statements, the government is seeking to be in the same position it was before the Evidence and Statements were suppressed. Through testimony by Sugar and Torres, the government will seek to introduce the fact that Stark 'took possession of' the drugs and transported them across the country. While they will not be able to physically bring the drugs into the courtroom, they will nonetheless have essentially 'introduced' the evidence by having Sugar testify that he and Stark took the RV with the drugs, and drove out of Arizona. This testimony would negate the Suppression of the Evidence by allowing the government to introduce testimony regarding suppressed evidence.

To the extent that the government can present testimony regarding the conspiracy prior to the traffic stop, the defendant specifically requests that this Court prevent the government from eliciting testimony which refers to the suppressed evidence.

B.    Evidence of Events After Arrival in Massachusetts.

The government, after introducing testimony about Stark's possession of the suppressed drugs prior to the stop, then wishes to complete its case by introducing testimony about Stark's possession of the drugs after the stop. The effect of the government's proffered case is to negate the Suppression Order of this Court, and proceed as if the illegality never occurred.

The offered evidence, in the form of testimony by Sugar, Torres, Ruiz and Trevor Teague, is patently unreliable and occurs in the context of Stark's agency relationship with the government. The government agents instructed Stark and Sugar in what to do, and therefore controlled the manner and means of the delivery. The evidence is vague and unreliable, as evidenced by the fact that one of the proffered witnesses was going to 'take the fifth,' but will be forced to testify as a result of a grant of immunity by this Court.

The other problem with the government's proposed testimony regarding the controlled delivery is that Mr. Stark was working under the direction and control of the government. He was essentially a government agent at that point, where he was under the direction and complete control of the Massachusetts Case Agent.

The government states that it seeks to introduce evidence of the controlled delivery to show "proof of intent." However, at that point, Mr. Stark had intention to do anything other than obey the orders of government agents. Mr. Stark neither possessed any contraband nor intended to do anything with it at the time of his cooperation, as he, Sugar, the drugs and the RV were under the care and control of government agents. Therefore, the evidence of events after the arrival in Massachusetts is not evidence of Stark's intent or conspiracy, but rather evidence of the government's actions.

Providing 'context' is not a reason to introduce evidence of the controlled delivery. Once again, the government seeks to introduce the very evidence that this Court has suppressed. By introducing testimony regarding the controlled delivery, the government once again 'vouches' for the existence of the suppressed evidence, in the same way it wants to by testimony regarding the drugs leaving Arizona. This type of evidence would defeat the purposes and goals of the Exclusionary Rule.

Finally, Mr. Stark reiterates his request that this Court suppress the statements made to the Massachusetts Case Agent. The reasons for that suppression have been greatly illuminated by the evidence the government seeks to introduce.

The actions of law enforcement in this case were, in effect, to get a confession from Mr. Stark and then get it again after "the cat was out of the bag" and after sufficient time had passed for this Court to find that the taint had cleared. The result of the admission of the final statement will be to allow law enforcement to benefit from its violation of the constitution merely by asking the same questions repeatedly. There is little doubt that the substance of the "confessions" by Mr. Stark are the same between the Missouri statements and the Boston statements. The only difference is the location and the number of times he spoke with law enforcement. Surely the constitutionality of the law enforcement actions does not turn on the number of times, and over how many days, it asks the same questions.

It is possible that the multiple conversations with Mr. Stark were convenient to the government because he was being transferred from one case agent to another. However, the convenience of the government is not sufficiently compelling to undercut the purposes of the exclusionary rule.

In many ways, this case parallels the recent Supreme Court case of *Missouri v. Seibert*, 542 U.S. 600 (2004). In that case, the government employed a "two step" interrogation, whereby it obtained a statement in violation of Miranda and the fifth amendment, and then administered Miranda warnings and obtained a repeat of the original confession. The Supreme Court declared that type of interrogation unconstitutional. *Id.* The plurality decision noted that the earlier unwarned statement was basically rehashed after the Miranda warnings were later given. However, the subsequent Miranda warnings were insufficient to cure the earlier Miranda violation. "It would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before." *Id.* at 658.

That type of "two step interrogation" is very similar to the situation Mr. Stark faced.[2] His initial confession was complete. He was not released from custody, afforded counsel, nor brought before a Court. Finally, before he is released, he is made to reiterate his prior confession. It is noteworthy that his second confession was not necessarily totally voluntary, as his "cooperation" was not complete and the "consideration" for that cooperation not guaranteed until the actual controlled delivery was accomplished. Therefore, he was not free to refuse to recapitulate his statements to the officers during the controlled delivery without jeopardizing his "consideration" for cooperating.

---

[2]The analytical framework in this case differs substantially from *Seibert*, in that the initial confession was a fruit of the illegal seizure and not obtained in violation of the Fifth Amendment. There is no "fruit of the poisonous tree" analysis under the Fifth Amendment, and there is no "failure to warn" issue in Mr. Stark's case. Nonetheless, the end result is hauntingly similar in the following respect: A confession obtained in violation of the constitution (confession 1) is then repeated at a later point after a "cure" to the constitutional violation occurs (in *Seibert* the Miranda warnings; in this case the "attenuation of the taint").

C.    Evidence of Prior Drug Transactions

In its third offer of evidence, the government seeks to introduce classic "prior bad acts" evidence in violation of F.R.E. 404(b)[3]   The government proposes to introduce evidence, through alleged co-conspirators, that Mr. Stark previously transported drugs across the country. This evidence is nothing more than an offer of proof of a course of prior conduct offered to prove that the defendant acted in conformity with these prior actions.

This evidence is not relevant for any purpose in the current case.  The government's first justification is to show that Torres had a prior relationship and "recognized him and knew him." Mr. Stark's identity is not in question here, and evidence of prior drug transactions would not serve to enlighten the jury as to what Mr. Stark's identity was.  *Compare Dowling v. United States*, 493 U.S. 342 (U.S. 1990) (where a similar prior prosecution of a masked bank robber was considered "highly probative circumstantial evidence" in a subsequent trial).

The evidence set out in the government's offer of proof is vague and unreliable.  To the extent that the government does not introduce specific evidence or testimony regarding the deliveries, the testimony will be vague and serve only to condemn the defendant by allegations of past wrongdoing.

In this case, the jury can understand the alleged conspiracy and the government's evidence of transportation without the 'background information' of prior unrelated deliveries.

_____

[3]"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident..."

While it is true that 'Evidence of other criminal acts [is] admissible . . . when [it is] so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged...", this is not such a case. *See Green v. United States*, 176 F.2d 541, 543 (1st Cir. 1949). The conspiracy which Mr. Stark is charged with is 'self-contained,' and evidence of an unrelated criminal transaction will be far more prejudicial than probative. *See generally United States v. Currier*, 821 F.2d 52, 56 (1st Cir. 1987) (admitted statements "were not necessary to complete the story of the crime...the jury could have understood the [firearm] transaction, which was in no way related to narcotics, without the references to [narcotics]").

The government's other proffered reason for introducing this evidence is to "counter defense arguments that Stark was merely doing his brother-in-law Ruiz a favor and did not know anything about the drug trafficking conspiracy." This reasoning is speculative and does not comport with the other evidence that the government seeks to introduce.

This Court suppressed the drugs themselves and also suppressed Stark's initial statements made to the government agents. However, the Court has ruled that the subsequent statement made by Stark in Massachusetts is admissible over defendant's objection. That statement, if introduced by the government, would be the counter to any argument that Stark did not know of the conspiracy. Furthermore, unless that argument is actually put forward, the evidence is essentially irrelevant for that purpose.

Finally, admission of this evidence is substantially more prejudicial than probative, and should be excluded under F.R.E. 403. The evidence will do nothing but confuse the jury as to what Mr. Stark was charged with, and will be used to try and prove that because Stark did this act

-8-

before, he must be guilty of doing it on this occasion.

D.      The evidence the government seeks to introduce is an attempt to avoid the suppression of the drugs in this case, and to render meaningless the exclusion of evidence in this case.

As the defendant has previously noted, if not for the illegal stop in this matter, the government would not have had evidence of the involvement of any of the other parties it intends to call as witnesses in this matter. The government now seeks to profit from its misconduct by introducing evidence indirectly acquired as a result of the unlawful stop. This situation is the polar opposite of the "inevitable discovery" type of case, since the government would have no evidence of the crime absent the illegal seizure. *Contrast Nix v. Williams*, 467 U.S. 431 (1984).

"When defining the precise scope of the exclusionary rule, however, we must focus on systemic effects of proposed exceptions to ensure that individual liberty from arbitrary or oppressive police conduct does not succumb to the inexorable pressure to introduce all incriminating evidence, no matter how obtained, in each and every criminal case." *James v. Illinois*, 493 U.S. 307, 319-320 (U.S. 1990).

"[Depriving] the prosecution of probative evidence acquired in violation of the law may be a tolerable and necessary cost of the exclusionary rule. Implementation of the rule requires [a Court] to draw certain lines to effect its purpose of deterring unlawful conduct." *James v. Illinois*, 493 U.S. 307, 322 (1990) (Kennedy, J., dissenting). In this case, the exclusion of the drugs will deprive the prosecution of much evidence. However, it is a perversion of the Exclusionary Rule to allow the government to introduce evidence of those drugs by witnesses rather than by physically carrying them into the courtroom.

The purpose of the government conduct in repeatedly interrogating Mr. Stark was both to familiarize the new agent with the "plan," and by repeatedly Mirandizing him, to insulate the statements from a challenge for voluntariness. As stated above, law enforcement should not profit from their illegal conduct merely because they continue asking the same question over and over again until eventually enough time passes for the taint to be dissipated.

The purpose of the exclusionary rule is to deter the unconstitutional conduct of law enforcement. The "application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served," *United States v. Calandra, 414 U.S. 338, 348 (1974).* This case is just such an example, since law enforcement would be permitted to benefit from its violation of law simply by holding the defendant in custody without benefit of a lawyer or court and asking questions enough times so that enough time has passed for the "taint" to dissipate. This kind of conduct ought not to be condoned by the Courts, and therefore all statements should be suppressed.

Furthermore, if the government is permitted to introduce testimony regarding the controlled delivery, an illegal search and a resultant involuntary confession becomes a voluntary statement and admissible evidence by the simple fact of the passage of time. "Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the passage of time, in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words."" *See generally Brown v. Ill.*, 422 U.S. 590, 602-603 (1975).

-10-

**A HEARING IS REQUESTED ON THIS OPPOSITION**.

Respectfully Submitted,
By his attorney,

/s/ MELVIN NORRIS

Date:   November 14, 2005

Melvin Norris
260 Boston Post Road
Wayland, MA 01778
(508) 358-3305
BBO# 373900